United States District Court
Southern District of Texas
**ENTERED**
January 05, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| Vástago Producciones, LLC, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § § | Case No. 4:23-cv-01432 |
| Heaven Publishing LLC and Michael Rodriguez, | § § § | |
| *Defendants.* | § § | |

## **MEMORANDUM AND RECOMMENDATION**

In this copyright case, Plaintiff Vástago Producciones, LLC has filed a motion for partial dismissal of certain counterclaims filed by Defendants Heaven Publishing LLC and Michael Rodriguez. Dkt. 31. After carefully considering the motion, Defendants' response, Dkt. 34, Vástago's reply, Dkt. 35, the live pleadings, and the applicable law, it is recommended that the motion be granted in part—only with respect to Rodriguez's counterclaims for an accounting, unjust enrichment, and conversion—but denied with respect to Heaven Publishing's counterclaims.

## **Background**

This suit concerns a dispute over ownership to 75 musical works (the "Musical Works"). Except where indicated, the following facts are taken from Defendants' live pleading, which are taken as true at this stage.

From 2003 through mid-2017, Rodriguez worked for Vástago and its affiliates, purportedly as an employee in some respects but as an independent contractor with respect to others. Dkt. 27 at 3. Rodriguez co-composed twelve of the Musical Works before he started working for Vástago. *Id.* at 19.

As a Vástago employee, Rodriguez served as a musical director and director of artists and repertoire. *Id.* at 3. But according to Rodriguez, he provided songwriting, arranging, musical performance, and record production services to Vástago as an independent contractor. *Id.* at 4. Rodriguez contributed ideas and elements to the Musical Works, including by playing melodies, hooks, and chords on the keyboard. *Id.* at 7. According to him, these songwriting sessions were not part of his regular employment activities. *Id.* Rather, Rodriguez often composed these elements at home, on his own instruments and equipment, and during non-working hours. *Id.* at 8. He also used his own computer to produce and arrange the Musical Works. *Id.* at 9.

Rodriguez maintains that Vástago did not reimburse him for costs and expenses associated with his songwriting, arranging, performing, or production services. *Id.* Vástago did so only for the other services Rodriguez performed as a Vástago employee. *Id.* Vástago provided both W-2 statements reflecting Rodriguez's employee status and 1099 statements for his work as an independent contractor. *Id.* at 7.

Rodriguez maintains that Vástago treated him as a co-author of the Musical Works. Vástago listed Rodriguez as a songwriter entitled to receive public performance royalties; issued documents acknowledging his share of royalties for writing and producing certain of those works; and acknowledged his co-author status in filings with the U.S. Copyright Office. *Id.* at 4-5, 19-20. In its copyright registrations, Vástago asserted it had acquired exclusive ownership of the Musical Works through written agreements. *Id.* at 5, 19-20. But it is undisputed that Vástago and Rodriguez did not have a contractual agreement specifying who would own the Musical Works. *See id.* at 10, 19; *see also* Dkt. 31 at 10 n.2 (admitting "there is no express contract claim").

During Rodriguez's employment, Vástago paid Rodriguez some royalties for his songwriting, musical performance, and record production services. Dkt. 27 at 20. But Vástago allegedly did not pay the full amount owed. *Id.* Vástago also kept the publisher's share of the Musical Works that Rodriguez maintains should have been paid to him. *Id.*

Rodriguez transferred to Heaven Publishing his "sole, perpetual and exclusive right … to administer exclusively, control, use, license, exploit and otherwise deal with" the Musical Works, including "to collect income in connection therewith whenever earned." *Id.* at 3. Records from the U.S. Copyright Office reflect that Heaven Publishing recorded the transfer on December 19, 2022, but the underlying agreements were executed on

3

November 15, 2018 and December 12, 2022.  Dkt. 22-2 at 2 (PX-B, attached to amended complaint).

This dispute came to a head in 2023.  Rodriguez emailed Vástago in March 2023, demanding unpaid producer and royalties in 2022 and royalties for live performances of certain works since 2020.  *See* Dkt. 22-3 at 2 (PX-C). Vástago responded that it is the "sole and exclusive owner" of the works at issue.  *Id.*  In reply, Rodriguez reiterated that Vástago's prior payments evince his right to receive royalties and that the parties have no written agreement. *Id.*  Rodriguez gave Vástago five days to resume its payments.  *Id.*

A few weeks later, Vástago filed this suit against Defendants, seeking a declaration under the Copyright Act that it is the sole author and owner of copyrights to the Musical Works.  *See* Dkt. 1.  Vástago later added two state law claims:  money had and received/unjust enrichment and conversion. Dkt. 22 at 12-13 (first amended complaint).

Defendants counterclaimed for declaratory relief, an accounting, money had and received/unjust enrichment, and conversion.  *See* Dkt. 27 at 21-27. That prompted Vástago to file a partial motion to dismiss a subset of the counterclaims:  (1) Heaven Publishing's demand for an accounting; (2) Defendants' claim for money had and received/unjust enrichment; and (3) Defendants' conversion claim.  Dkt. 31 at 7-13.

<u>**Legal standard**</u>

Dismissal under Rule 12(b)(6) is warranted if a party fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Rather, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (analyzing *Twombly*, 550 U.S. at 555-56). When resolving a Rule 12(b)(6) motion, the court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favor to the plaintiffs." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (internal quotation marks omitted).

<u>Analysis</u>

I. <u>**Heaven Publishing, but not Rodriguez, has stated plausible claims.**</u>

    A.     **Only Heaven Publishing has co-ownership rights that support an accounting.**

In Count Two, Defendants request an accounting. Vástago initially moved to dismiss this claim only as asserted by Heaven Publishing, arguing that Heaven Publishing is not a joint owner of the Musical Works entitled to pursue an accounting. Dkt. 31 at 7-8. But Defendants responded that Heaven Publishing has the right to seek an accounting "as the transferee" of Rodriguez's co-ownership rights in those works. Dkt. 34 at 8. That position led Vástago to assert that Rodriguez transferred away his rights to the Musical Works, such that *his* accounting claim should be dismissed. Dkt. 35 at 4. Given the terms of the agreement between Rodriguez and Heaven Publishing, *see* Dkt. 27 at 3 (quoting operative language), the only defendant entitled to seek an accounting is Heaven Publishing.

"It is widely recognized that a co-owner of a copyright must account to other co-owners for any profits he earns from the licensing or use of the copyright." *Quintanilla v. Tex. Television Inc.*, 139 F.3d 494, 498 (5th Cir. 1998) (internal quotation marks and alterations omitted). As the Fifth Circuit has recognized, this duty to account "does not derive from the copyright law's proscription of infringement. Rather, it comes from '... general principles of

law governing the rights of co-owners'" based on state law.  *Goodman v. Lee*, 78 F.3d 1007, 1012 & n.16 (5th Cir. 1996) (quoting *Oddo v. Ries*, 743 F.2d 630, 633 (9th Cir. 1984), and collecting other decisions).

The question here is which, if any, defendant has the right to seek an accounting from Vástago.  According to the counterclaims, Rodriguez co-owned the Musical Works with Vástago, at least originally.  *See* Dkt. 27 at 3.  Taking that allegation as true, Rodriguez could "freely transfer any portion of his ownership interests in that copyright" to a third party.  *See Corbello v. DeVito*, 777 F.3d 1058, 1065 (9th Cir. 2015); *see also Howard v. Weston*, 354 F. App'x 75, 77 (5th Cir. 2009) ("A joint owner may transfer his interest without the other co-owner's consent.").  That is what Rodriguez allegedly did when executing an agreement that gave Heaven Publishing his "exclusive rights in and to" the Musical Works, specifically:

> the sole, perpetual and exclusive right ... *to administer exclusively, control, use, license, exploit and otherwise deal with* [the Subject Musical Works as to Rodriguez's songwriter shares in said works] (individually and collectively) in any and all media and by any and all other means, devices, methods, configurations or technologies, ... and *to collect income in connection therewith whenever earned* ....  The foregoing grant includes, without limitation, the right to distribute, reproduce, publicly perform and exhibit, make derivative works, print, publish, sell, dramatize, use, synchronize and license the use of the Works; to execute in its own name any and all licenses and agreements whatsoever affecting or respecting the Works ....

Dkt. 27 at 3 (emphasis added; alteration in original).[1]

On its face, this language vested Heaven Publishing with all of Rodriguez's rights to the Musical Works.  Upon this transfer, Heaven Publishing "stepp[ed] into [its] transferor's shoes" to "become[ ] a joint owner." 1 Melville B. Nimmer et al., Nimmer on Copyright § 6.12[C][1] (2023).  And as a joint owner, Heaven Publishing is entitled to seek an accounting from its alleged co-owner, Vástago.  *See Howard*, 354 F. App'x at 77 (explaining that "the obligation of a joint owner to account for profits from use and from licensing obtains as to a[] transferee" who received a joint interest) (quoting 1 Nimmer on Copyright § 6.12[C][1]).  This means Heaven Publishing has stated a plausible accounting claim.

That conclusion, however, necessarily confirms that Rodriguez retained no right to force an accounting, as Vástago asserts.  *See* Dkt. 35 at 4.  Rodriguez attempts to avoid that result by asserting, in conclusory fashion, that the agreement "transferred only certain enumerated exclusive rights" to Heaven Publishing.  Dkt. 34 at 8 n.5.  Yet the Copyright Act delineates the rights associated with copyright ownership.  *See* 17 U.S.C. § 106; Dkt. 35 at 3-4.  And the agreement's language covers all of those rights: (1) to reproduce the

---

[1] Defendants' pleading couches this agreement as a "transfer" of Rodriguez's exclusive rights in the Disputed Works, rather than a license.  *See* Dkt. 27 at 3.  Vástago does not dispute that characterization.

Musical Works, (2) to prepare derivative works; (3) to distribute or transfer (including license) the Musical Works; (4) to perform the Musical Works publicly; to (5) to display (or exhibit) the Musical Works; and (6) to perform the Musical Works via a digital audio transmission. *Compare* 17 U.S.C. § 106, *with* Dkt. 27 at 3.  Having transferred away all his rights to the Musical Works, Rodriguez is no longer a joint owner who can demand an accounting from Vástago.  *See Howard*, 354 F. App'x at 77 (affirming dismissal of accounting claim because joint owner had transferred his interests to another; "Howard cannot bring an action to enforce the copyright rights he no longer owns").  Accordingly, Rodriguez's accounting claim should be dismissed.

**B.    Heaven Publishing, but not Rodriguez, has stated a claim for unjust enrichment.**

In Count Three, Defendants assert a counterclaim for unjust enrichment.  As Vástago notes, *see* Dkt. 35 at 4—and the Court agrees—Rodriguez cannot pursue this claim.  Under Texas law, an unjust enrichment theory seeks to recover benefits obtained by one party from another "by fraud, duress, or the taking of an undue advantage."  *See Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).  Rodriguez transferred away any such right to recovery by giving Heaven Publishing his "sole, perpetual and exclusive right ... to administer exclusively, control, ... and otherwise deal with" the Musical Works, including his right to "collect income in connection"

9

with those works.  *See* Dkt. 27 at 3; *see also supra* Part I.A.  He cannot bring an unjust enrichment claim.

Regarding Heaven Publishing, Vástago primarily contends that unjust enrichment is duplicative of the claim for an accounting.[2]  Dkt. 31 at 9-10.  Defendants respond that unjust enrichment instead provides the predicate for the accounting claim.  Dkt. 34 at 9-10.  Defendants also note that federal rules allow them to plead alternative claims.  *See id.* at 10.

Both sides cite *Oddo*, 743 F.2d at 633, which explains that a co-owner's duty to account to its co-owners for profits earned from licensing or using the copyright derives "from equitable doctrines relating to unjust enrichment and general principles of law governing the rights of co-owners."  *See* Dkt. 31 at 9; Dkt. 34 at 9.  Unjust enrichment therefore provides an avenue to obtain an

---

[2] In a footnote, Vástago insinuates that a quasi-contract claim for unjust enrichment is not viable in the face of another quasi-contract claim for accounting.  Dkt. 31 at 10 n.2.  That is wrong as a matter of law.  The principle invoked by Vástago prohibits a party from pursuing quasi-contractual—i.e., equitable—relief "when a valid, express contract covers the subject matter of the parties' dispute."  *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000).  This prohibition exists because allowing a party to obtain equitable relief would improperly circumvent the express terms of a contract.  *See id.*

That principle has no application to quasi-contractual claims asserted in the absence of a valid contract.  By definition, a quasi-contract "'is not a contract at all but an obligation imposed by law to do justice even though it is clear that no promise was ever made or intended.'"  *Id.* (quoting John D. Calamari et al., The Law of Contracts § 1-12 (3d ed. 1987)).  No authority suggests that one equitable claim categorically forecloses another, much less when those claims seek an accounting and recovery for unjust enrichment.  And those equitable claims are properly premised on the undisputed fact that the parties have no express contract specifying who owned the Musical Works when they were created or produced.

accounting.  That does not mean, however, that both claims are identical.  And the overlap between accounting and unjust enrichment does not mean that Heaven Publishing has failed to state a plausible basis for relief on the latter.

Vástago cites no authority mandating dismissal of similarly related claims.  Instead, even if a party's claims overlap, it "may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2).  The party simply cannot recover twice for the same injury.  *See Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 726 (8th Cir. 2014).  The pleading acknowledges this limitation, stating that the counterclaims are pleaded "in the alternative" only, and that Defendants "are not seeking double recovery of any damages awarded" pursuant to them. *See* Dkt. 27 at 25.

In some instances, redundant allegations can be stricken under Fed. R. Civ. P. 12(f).  But courts have "considerable discretion" when resolving Rule 12(f) motions.  *See Blackmer v. Shadow Creek Ranch Dev. Co.*, 2007 WL 7239968, at *2 (S.D. Tex. June 26, 2007) (citing *In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1168 (5th Cir. 1979)).  Requests to strike "should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." *Id.* (quoting 5C Charles Alan Wright et al., Federal Practice and Procedure § 1382 (3d ed.

2004)).  Heaven Publishing's unjust enrichment counterclaim clearly concerns the same subject matter as the underlying controversy, and its inclusion poses no appreciable prejudice to Vástago.  Indeed, Vástago has asserted its own unjust enrichment claim against both Heaven Publishing and Rodriguez.  *See* Dkt. 22 at 12.

In sum, there is no valid basis for dismissing Heaven Publishing's unjust enrichment claim.  But the same claim brought by Rodriguez should be dismissed.

### C. Heaven Publishing's conversion claim is adequately pleaded, but Rodriguez cannot pursue this claim.

In Count Four, Defendants raise a counterclaim for conversion.  Vástago is correct, for the reasons already addressed, that Rodriguez cannot pursue this claim.  *See* Dkt. 35 at 4 (arguing that Rodriguez's transfer of rights requires dismissal of all his claims).  "A fundamental element of a conversion cause of action is that the plaintiff be the owner of or legally entitled to immediate possession of the property allegedly converted."  *Curtis v. Anderson*, 106 S.W.3d 251, 257 (Tex. App.—Austin 2003, pet. denied).  As Rodriguez no longer owns or possesses any rights to the Musical Works, *see supra* Part I.A, his conversion claim necessarily fails.

With respect to Heaven Publishing's conversion claim, Vástago insists that the economic loss rule precludes recovery.  *See* Dkt. 31 at 10-11.  This

position is flawed.  The term "economic loss rule" is "something of a misnomer." *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415 (Tex. 2011).  The rule does not foreclose all causes of action that seek economic losses. *See id.* at 418-19 (economic damages alone do not necessarily bar a cause of action).  Rather, it "generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014). For that reason, the rule does not prevent a party from recovering economic losses "under a variety of intentional tort theories absent a contractual obligation." *Eagle Oil & Gas Co. v. Shale Expl., LLC*, 549 S.W.3d 256, 268-69 (Tex. App.—Houston [1st Dist.] 2018, pet. dism'd) (holding that economic loss rule did not bar a trade secret misappropriation claim).

Neither side maintains that a contract governs the subject matter of this dispute.  *See generally* Dkt. 22 (no allegation that parties had a contract); Dkt. 27 (same).  And no authority remotely suggests that Heaven Publishing's equitable claims would trigger the economic loss rule.  Quite the contrary, equitable claims rely on the *absence* of a contractual agreement.[3]  *See, e.g.*, *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) (addressing

---

[3] As already explained, equitable claims, though also called "quasi-contract" claims, do not involve contracts at all.  *See supra*, Part I.B n.2.

unjust enrichment). Indeed, Vástago similarly pleaded claims for unjust enrichment and conversion. *See* Dkt. 22 at 12-13. The economic loss rule has no bearing on the conversion claim—whether asserted by Vástago or by Heaven Publishing. Only Rodriguez's conversion claim should be dismissed.

## II.   <u>Rodriguez may file a standalone motion for leave to amend.</u>

In their response, Defendants request leave to amend any counterclaims that are dismissed. Dkt. 34 at 12-13. They provide no specifics. Defendants do not explain whether or how Rodriguez can remedy his transfer of ownership rights to the Musical Works. Then again, only in a reply brief did Vástago pivot from disputing Heaven Publishing's interest to challenging Rodriguez's co-ownership right based on the transfer. *See* Dkt. 35 at 4.

The Court is skeptical that Rodriguez can overcome the contractual language transferring his co-ownership rights to Heaven Publishing. And the Court need not allow a futile amendment that "could not survive a motion to dismiss." *See Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010). Nevertheless, given the presumption favoring amendment, *see* Fed. R. Civ. P. 15(a), the better approach is to invite Rodriguez to file a separate motion for leave to amend—and a proposed pleading—if he wishes to show that amendment would not be futile.

### Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff Vástago Producciones, LLC's partial motion to dismiss Defendants' counterclaims (Dkt. 31) be **GRANTED IN PART** and **DENIED IN PART**. Defendant Michael Rodriguez's counterclaims for an accounting, unjust enrichment, and conversion should be **DISMISSED**.  In all other respects, Vástago's motion to dismiss should be **DENIED**.

It is further **ORDERED** that Rodriguez may file a motion for leave to amend his counterclaims, but he must do so no later than **January 19, 2024**. Any motion for leave <u>must attach</u> a copy of a proposed amended pleading.

**The parties have fourteen days from service of this Report and Recommendation to file written objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).   Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.  *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on January 4, 2024, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge

15