United States District Court
Southern District of Texas
**ENTERED**
April 01, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Vástago Producciones, LLC, § § § *Plaintiff,* § § § Case No. 4:23-cv-01432 v. § § Heaven Publishing LLC and § Michael Rodriguez, § § *Defendants.* § | |

# MEMORANDUM AND ORDER

Pending is an opposed motion filed by Defendants Heaven Publishing LLC and Michael Rodriguez for leave to file Second Amended Counterclaims. Dkt. 39. This motion follows a previous ruling that dismissed certain counterclaims filed by Rodriguez but permitted him to seek leave to amend. *See* Dkt. 40 (adopting Dkt. 38).

After carefully considering Defendants' motion for leave to amend, Dkt. 39, the response filed by Plaintiff Vástago Producciones, LLC, Dkt. 42, Defendants' reply, Dkt. 43, the proposed amended pleading, Dkt. 39-2, and the applicable law, the Court grants the motion in part and denies it in part.

## Background

The undersigned's prior Memorandum and Recommendation details the factual background to this suit. *Vástago Producciones, LLC v. Heaven Publ'g*

*LLC*, 2024 WL 329960, at *1-2 (S.D. Tex. Jan. 5, 2024), *adopted by* 2024 WL 326646 (S.D. Tex. Jan. 25, 2024). Briefly summarized, this is a copyright dispute over ownership of 75 musical works (collectively, the "Musical Works"). Rodriguez maintains that he acquired co-ownership to the Musical Works both before and after he began working for Vástago. According to Rodriguez, however, Vástago failed to pay him certain royalties and wrongfully retained his co-ownership share as a publisher of the Musical Works. Dkt. 27 at 20.

In his live pleading, Rodriguez stated that he transferred to Heaven Publishing his "sole, perpetual and exclusive right … to administer exclusively, control, use, license, exploit and otherwise deal with" the Musical Works, including "to collect income in connection therewith whenever earned." *Id.* at 3. Documents reflect that Heaven Publishing formalized this transfer on December 19, 2022, although the underlying agreements were signed on November 15, 2018, and December 12, 2022. Dkt 22-2 at 2 (PX-B).

The dispute came to a head in 2023, when Rodriguez demanded unpaid royalties. That prompted Vástago to file this suit against Defendants, seeking a declaration of sole ownership to the Musical Works, among other claims. *See* Dkt. 1. Defendants responded by asserting counterclaims for a (1) declaration of copyright ownership; (2) an accounting; (3) unjust enrichment; and (4) conversion.

Vástago then filed a motion to dismiss targeting solely Heaven Publishing's request for an accounting and both Defendants' unjust enrichment and conversion claims. *See* Dkt. 31 at 7-13. But because Defendants' allegations indicated that Rodriguez had transferred all his rights to Heaven Publishing, the Court concluded that Heaven Publishing was the sole defendant entitled to pursue those counterclaims, which were adequately pleaded. *See* Dkt. 38 at 6-12; Dkt. 40 (adopting Dkt. 38; dismissing Rodriguez's counterclaims for an accounting, unjust enrichment, and conversion).

The Court dismissed Rodriguez's counterclaims for accounting, conversion, and unjust enrichment, determining that Rodriguez could not pursue claims against Vástago because he had transferred his rights in the Musical Works to Heaven Publishing. Dkt. 38 at 9, 12, 14-15; Dkt. 40. Nevertheless, the Court offered Rodriguez an opportunity to file a proposed new pleading, in connection with a motion for leave to amend, and demonstrate why an amendment would not be futile. Dkt. 38 at 14.

Responding to the Court's invitation, Defendants filed a motion for leave to amend, Dkt. 39, to which Vástago responded, Dkt. 42, and Defendants replied, Dkt. 43. Defendants' motion attached both their proposed amended counterclaims, Dkt. 39-2, and copies of the transfer agreements between Rodriguez and Heaven Publishing, Dkt. 39 at 3; Dkt. 39-3 at 2-8 (DX-A-1, publishing agreement), Dkt. 39-4 at 2-9 (DX-A-2, administration agreement),

3

Dkt. 39-5 at 2-4 (DX-A-3, Schedule B amendment), Dkt. 39-6 at 2-3 (DX-A-4, amendment) (collectively, the "Agreements"). The publishing agreement and administration agreement are in Spanish. *See* Dkt. 39-3 ("Contrato de Publishing"), 39-4 ("Contrato de Administración de Publishing"). At the Court's request, Dkt. 47, Defendants submitted official English translations of those agreements, Dkt. 48-1 at 2-11 (DX-A-1, publishing agreement), 21-27 (DX-A-2, publishing administration agreement). The pertinent terms of the Agreements are addressed below.

## **Legal Standard**

Generally, leave to amend a pleading shall be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). This rule "evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (internal quotation marks omitted). But a court can properly deny leave to amend "where the proposed amendment would be futile because it could not survive a motion to dismiss." *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010). Whether amendment would be futile hinges on "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000) (internal quotation marks omitted).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## Analysis

The issue underlying Defendants' motion for leave to amend is whether Rodriguez can pursue counterclaims for accounting, unjust enrichment, and conversion despite transferring his interests to Heaven Publishing. The answer is no, with respect to the Musical Works. But Rodriguez now alleges that he has rights to certain sound recordings (the "Sound Recordings") that were not included in the transfer. Based on a review of the Agreements, Rodriguez is entitled to pursue his claims with respect to the Sound Recordings. That conclusion, however, dictates that Heaven Publishing cannot pursue those same claims.

**I. Rodriguez cannot assert counterclaims arising from the exploitation of the Musical Works after the Agreements took effect.**

For the Musical Works, Rodriguez contends his status as a beneficial owner of the copyrights under 17 U.S.C. § 501(b) preserves the right to assert his counterclaims. Dkt. 39 at 4 & n.3. And because the Agreements can be

5

terminated at the end of their two-year term, Rodriguez contends that he did not transfer his copyrights *in toto* to Heaven Publishing. Dkt. 43 at 3. Based on that premise, Rodriguez maintains that he has a reversionary interest in the Musical Works that permits him to seek an accounting and recovery for unjust enrichment and conversion. Dkt. 39 at 4-5; Dkt. 43 at 3.

Vástago responds that beneficial owners under the Copyright Act are not joint owners to whom a co-owner would owe a duty to account, nor do they hold legal title, as required to assert unjust enrichment or conversion. *See* Dkt. 42 at 6-7. Vástago also disputes Defendants' position that Rodriguez did not completely transfer all his alleged rights in the Musical Works. Dkt. 42 at 4-5. The Court addresses these contentions in turn.

### A. Rodriguez's status as a beneficial owner of a copyright does not entitle him to seek an accounting.

The Copyright Act does not confer Rodriguez with a right to pursue an accounting. This is because Rodriguez's beneficial ownership in the copyrights merely entitles to him to assert a copyright infringement claim. It does not give him the status of a co-owner who can obtain an accounting from Vástago.

Under the Copyright Act, "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled ... to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). While the Copyright Act does not define a "beneficial owner," courts

have "agreed that an author who assigns his legal rights to a work in exchange for royalties from its exploitation has a beneficial interest sufficient for statutory standing under § 501(b)." *Smith v. Casey*, 741 F.3d 1236, 1241 (11th Cir. 2014) (citing, *inter alia*, *Batiste v. Island Recs. Inc.*, 179 F.3d 219-21 & n.2 (5th Cir. 1999)); *see also* H.R. Rep. No. 94-1476, at 159 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 5659, 5775 (beneficial owner includes author that parts with legal title to copyright in exchange for royalties).

Under the Agreements, Heaven Publishing must pay Rodriguez royalties for the "songwriter/composer … rights" from the "commercial use" of the Musical Works. *See* Dkt. 48-1 ¶ 6. Based on this language, Rodriguez qualifies as a beneficial owner of the copyrights.

But a co-owner's right to pursue an accounting from another co-owner does not flow from Section 501 of the Copyright Act. As the Fifth Circuit has explained, a co-owner's duty to "account to other co-owners for any profits he earns from the licensing or use of the copyright ... *does not derive from the copyright law's proscription of infringement. Rather, it comes from general principles of law governing the rights of co-owners.*" *Goodman v. Lee*, 78 F.3d 1007, 1012 (5th Cir. 1996) (quoting *Oddo v. Ries*, 743 F.2d 630, 633 (9th Cir. 1984) (second ellipses omitted). Those "general principles are rooted in state law" rather than the Copyright Act. *See id.* Rodriguez's reliance on Section 501(b) is misplaced.

7

Moreover, a co-owner's right to seek an accounting, based on state law, does not apply to a beneficial owner like Rodriguez. Under the Agreements, Rodriguez transferred to Heaven Publishing all his rights to the Musical Works. *See* Dkt. 48-1 at 4, 22-23.

As the Agreements state, the transfer gave Heaven Publishing "the sole, exclusive and permanent right to administer and use" the Musical Works, including, without limitation, the right to reproduce or perform the work "through public or private representation, radio, television, digital audio transmission, digital phonogram or any other means;" to "[c]hange titles and words, and arrange, adapt, translate, dramatize and transpose to and from" the Musical Works; to distribute, license, or assign the Musical Works; to "[p]rint, publish and sell scores, orchestrations, [and] arrangements" of the Musical Works; and to arrange for synchronization of the Musical Works "with movies and any other way in existence now or in the future." *Id.* at 5.

This encompasses the full panoply of rights enjoyed by a copyright owner. *See* 17 U.S.C. § 106 (listing the right to reproduce the copyrighted works, to prepare derivative works; to distribute or transfer (including license) the works; to perform the works publicly; to display (or exhibit) the works; and to perform the works via a digital audio transmission). Given this language, and under Defendants' theory of the case, Heaven Publishing co-owns the copyrights to the Musical Works together with Vástago.

8

At most, Rodriguez retained a right to payment of royalties *from Heaven Publishing* so long as the Agreements endure. *See* Dkt. 48-1 at 6-7 (Section 6 and 7 of publishing agreement). This right to payment does not equate to a co-ownership right necessary to pursue an accounting from Vástago. After all, a beneficial owner of a copyright, like Rodriguez, can be sued for copyright infringement, as he "has no independent right to use or license the copyright." *See Fantasy, Inc. v. Fogerty*, 654 F. Supp. 1129, 1131 (N.D. Cal. 1987); *see also SBK Catalogue P'ship v. Orion Pictures Corp.*, 723 F. Supp. 1053, 1061 (D.N.J. 1989) (composers' "status as 'beneficial owners' does not preclude the court from finding them liable for copyright infringement"). Contrast that with a true co-owner, who cannot be sued by its co-owner for copyright infringement, as all co-owners hold equal rights to exploit the copyright. *See Quintanilla,* 139 F.3d at 498.

As a matter of law, Rodriguez's transfer of his copyright interests in the Musical Works to Heaven Publishing therefore divested him of any right to pursue an accounting from Vástago. His request for leave to assert this counterclaim is barred as futile.

### B. Rodriguez's reversionary interest in the Musical Works does not entitle him to pursue his counterclaims.

In the alternative, Defendants contend that Rodriguez has a reversionary interest in the Musical Works because the Agreements, although

automatically renewable every two years, can be terminated by either party at least 60 days before the renewal date. Dkt. 39 at 5; Dkt. 43 at 3. Defendants rely on this hypothetical reversion to argue that Rodriguez can assert the counterclaims now. Dkt. 39 at 5; Dkt. 43 at 3 (citing *Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 1, 9-10, n.24 (Tex. 2008)). Vástago does not address this contention. *See* Dkt. 42. Nonetheless, the mere possibility that Rodriguez might recover his status as a co-owner of the Musical Works—at some point in the future—does not give him a present right to sue under Texas law for an accounting, unjust enrichment, or conversion.

    Defendants' reliance on *Coastal Oil* is misplaced. There, the Texas Supreme Court held that a mineral lessor had standing to sue for trespass because the wrongful drainage of gas allegedly reduced both his royalty revenues and the property's value. *Coastal Oil*, 268 S.W.3d at 9-10. The Court explained that Texas law recognizes trespass "action[s] for injury to a non-possessory interest, such as reversion." *Id.* "[B]ut in order to maintain it, [the plaintiff] must show … actual permanent harm to the property of such sort as to affect the value of his interest." *Id.* at 10 & n.24 (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 13, at 78 (5th ed. 1984)). Because the lessor's property sustained permanent injuries from the drainage of gas from his land, the Court held that he had "standing" to recover for trespass. *Id.* at 10.

Unlike the mineral lessor in *Coastal Oil*, Defendants do not claim that Vástago has caused permanent harm to Rodriguez's property, *i.e.* the copyrights to the Musical Works. Nowhere does their proposed amended complaint assert that Vástago's alleged failure to account, conversion, or unjust enrichment has permanently injured the copyrights or otherwise reduced their value. Rather, Defendants complain that Vástago's "refusal to account and pay over the sums owed to Rodriguez and Heaven Publishing" is causing monetary harm *to Defendants*. Dkt. 39-2 at 26, 28, 30.

Defendants cite no case where any court deemed an analogous monetary loss, devoid of any allegations of harm to the property itself, sufficient to justify similar claims by the holder of a reversionary interest. Rather, the Agreements make clear that Heaven Publishing alone has the right to take action "against any person to protect all rights and interests acquired" from Rodriguez while the Agreements remain in force. *See* Dkt. 48-1 at 24 (administration agreement). And as already concluded, Rodriguez's lack of present ownership or possessory rights to the Musical Works forecloses not only his accounting claim, but his unjust enrichment and conversion claims too. *See Vástago Producciones*, 2024 WL 329960, at *2-5.

Another decision cited by Defendants, *Eden Toys v. Florelee Undergarment Co., Inc.*, 697 F.2d 27 (2d Cir. 1982), is even further afield. *See* Dkt. 43 at 3-4. In that case, the court allowed a copyright holder and its

11

alleged licensee to bring claims for infringement, but only because the record did not definitively indicate whether the license agreement was valid and enforceable. *See Eden Toys*, 697 F.2d at 36-37. Here, however, Defendants assert—and Vástago does not dispute—that Rodriguez has, in fact, validly transferred his interests in the Musical Works to Heaven Publishing. The written Agreements resolve the matter. As the current owner of Rodriguez's interests, only Heaven Publishing can seek relief for Vástago's alleged conduct post-dating the Agreements' effective date.[1]

Contrary to Defendants' assertions, there is nothing "nonsensical" about precluding Rodriguez from asserting rights that he *may*—but ultimately may not—re-acquire if the Agreements are later terminated. *See* Dkt. 39 at 5 n.4. Courts routinely require a plaintiff to demonstrate a *present* right to sue. *Cf. Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 458 (5th Cir. 2005) ("[S]tanding is … determined as of the commencement of the suit." (quoting *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 570 n.5 (1992)). Rodriguez cannot assert a right that hinges on the speculative occurrence of a future event.

---

[1] This conclusion does not affect Rodriguez's entitlement to seek recovery for Vástago's failure to pay royalties pre-dating the transfer of his rights to Heaven Publishing. *See Sanchez v. Hacienda Recs. & Recording Studio, Inc.*, 2015 WL 1219651, at *5 (S.D. Tex. Mar. 17, 2015) (copyright assignor had standing to sue for claims accrued before transferring his rights (citing *In re Isbell Recs., Inc.*, 774 F.3d 859, 869 (5th Cir. 2014)). Defendants' proposed pleading does not explicitly delineate whether or to what extent Vástago's challenged conduct pre-dates the Agreements. That must be clarified in whatever amended pleading Defendants ultimately file.

12

Accordingly, the Court denies Rodriguez leave to assert claims against Vástago for accounting, conversion, or unjust enrichment concerning the Musical Works, at least after the Agreements took effect. He can, however, assert those claims to the extent they seek relief pre-dating the Agreements.

## II. Rodriguez has stated plausible counterclaims with respect to the Sound Recordings.

On the other hand, the foregoing analysis has no bearing on Rodriguez's right to pursue his accounting, unjust enrichment, and conversion claims, with respect to the Sound Recordings. The Agreements reflect, and Vástago does not dispute, that the Sound Recordings were not among the works that Rodriguez transferred to Heaven Publishing. *See* Dkt. 39-3, 39-4, 39-5, 39-6; Dkt. 42 at 7; Dkt. 48-1 at 2-9, 21-27. Rodriguez therefore remains the purported co-owner of the Sound Recordings who can seek an accounting and assert that Vástago unjustly enriched itself or converted Rodriguez's interests. The Court grants Rodriguez's request for leave to plead these claims with respect to the Sound Recordings. *See* Dkt. 39 at 5-6.

By necessary implication, however, Rodriguez's retention of ownership rights to the Sound Recordings means that Heaven Publishing cannot assert those same claims on its own behalf. The Court therefore agrees with Vástago that any amended pleading must exclude Heaven Publishing's claims to the extent that they rely on the Sound Recordings. *See* Dkt. 42 at 7.

## Conclusion

For the foregoing reasons, it is **ORDERED** that Defendants Heaven Publishing LLC and Michael Rodriguez's request for leave to file their Second Amended Counterclaims (Dkt. 39) is **GRANTED IN PART** and **DENIED IN PART**, as follows:

The Court **GRANTS** Rodriguez—and only Rodriguez—leave to assert counterclaims for an accounting, conversion, and unjust enrichment against Plaintiff Vástago Producciones only with respect to (1) his rights to the Sound Recordings; and (2) any alleged failures by Vástago to pay amounts owed, in connection with the Musical Works, before the effective date of the Agreements. In all other respects, the motion for leave is **DENIED**.

It is further **ORDERED** that Defendants file a revised version of their Second Amended Counterclaims that comports with this Order **no later than April 15, 2024**.

Signed on April 1, 2024, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge